IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

2015 MAY 22 P 12: 36

Appeal No. 15-1219

FILED IN CLERKS OFFICE
US COURT OF APPEALS

MICHAEL NARKIN,

Objector-Appellant,

v.

VIBRAM USA, INC., ET AL.,

Defendant-Appellee

Appeal from the United States District Court
For the District of Massachusetts
Case No. 1:12-cv-10513-DPW

PRO SE OBJECTOR-APPELLANT MICHAEL NARKIN'S
BRIEF

Michael Narkin, Pro Se
85391 Chezem Road
Eugene, OR 97405
541-852-5507

## STATEMENT OF ISSUES

1. Did the district court abuse its discretion by approving the settlement without first determining the number of valid claims filed by the published deadline, and the monetary amount that will be paid to class members, and comparing that figure to class counsel's attorneys' fees?

2. Did the district court abuse its discretion by failing to assure that the attorneys' fees awarded are proportional to the monetary amount that will be paid to class members, and reasonable in relation to class counsel's reasonable lodestar?

3. Does the first factor set forth in *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), "the time and labor required," mandate consideration of class counsel's lodestar for purposes of a lodestar cross-check?

4. Did the district court abuse its discretion in awarding class counsel ~~$20 million for eleven months work~~ $937,500.00, when that fee award may represent a multiplier of 10 or more of class counsel's reasonable lodestar?

5. Did the district court violate Rule 23(h) and due process by setting the objection deadline before the date on which class counsel filed their fee motion, and by allowing them to hide discovery under the cloak of a confidentiality agreement?

6. Did the district court abuse its discretion by making a cy pres award that violates the rule against perpetuities?

7. Did the district court abuse its discretion by allowing attorneys accused of engaging in unethical conduct in another case to remain as class counsel in the instant case?

# TABLE OF CITATIONS

## Cases

*Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*,
442 F.3d 1283 (11th Cir. 2006)..................................................................29

*Boeing v. Van Gemert*, 444 U.S. 472 (1980).........................................19, 20, 21

*Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)....28

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012).....................................16

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)..................13, 14, 16, 17

*Faught v. American Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011)....................................................................9

*Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002).....................................9

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013)...............12, 16

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)....14, 17

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013)..........13, 19, 28, 29

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013)......................21, 22

*In re Mercury Interactive Corp. Sec. Litig.*,
2010 U.S. App. LEXIS 17189 (9th Cir., August 18, 2010)....................26, 27

*In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001)...............23

*Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000).....................22

*Pearson v. Nbty, Inc.*,
2014 U.S. Dist. LEXIS 357, at *15 (N.D. Ill. Jan. 3, 2014).........................30

*Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010).................................................24

Bauer v Myers, 244 Fed. 902 (C.C.A. 8th, 1927)

*Pinto v. Princess Cruise Lines Ltd.*,
513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007)..................................23

*Redman v. Radioshack Corp.*,
2014 U.S. App. LEXIS 18181 (7th Cir., September 19, 2014)..................26

*Strong v. BellSouth Telecommunications, Inc.*,
137 F.3d 844 (5th Cir. 1998)..................................................19

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006)..................................................20

*Thorogood v. Sears, Roebuck, & Co.*, 627 F.3d 289 (7th Cir. 2010)..........9

*Waters v. Int'l Precious Metals*, 190 F.3d 1291 (11th Cir. 1999)........9, 19, 20

### Treatises

Federal Judicial Center, *Managing Class Action Litigation:
A Pocket Guide for Judges* (3d Ed. 2010)......................................22

### Statutes and Rules

Fed. R. Civ. P. 23(h).............................................................23

## ARGUMENT

*Pinto v. Princess Cruise Lines Ltd.*,
513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) .............................................. 23

*Redman v. Radioshack Corp.*,
2014 U.S. App. LEXIS 18181 (7th Cir., September 19, 2014) .................... 26

*Strong v. BellSouth Telecommunications, Inc.*,
137 F.3d 844 (5th Cir. 1998) ....................................................................... 19

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ....................................................................... 20

*Thorogood v. Sears, Roebuck, & Co.*, 627 F.3d 289 (7th Cir. 2010) .......... 9

*Waters v. Int'l Precious Metals*, 190 F.3d 1291 (11th Cir. 1999) ........ 8, 19, 20

**Treatises**

Federal Judicial Center, *Managing Class Action Litigation:
A Pocket Guide for Judges* (3d Ed. 2010) .................................................. 22

**Statutes and Rules**

Fed. R. Civ. P. 23(h) ............................................................................. 23

universally held that the amount of money that will actually be delivered to class members is relevant to both the approval of the settlement and the award of fees, the Seventh Circuit rejected a settlement where the district court had lazily guessed at the value that would be delivered to the class, rather than examining the actual claims data. *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014).

> Not only did the settlement agreement not quantify the benefits to the class members, but the judge approved it before the deadline for filing claims. He made no attempt to estimate how many claims were likely to be filed, though without such an estimate no responsible prediction of the value of the settlement to the members of the class could be made.

*Id.* at 723.

The Seventh Circuit rejected the district court's finding that the settlement's value was $90 million based upon plaintiff's expert's report, and found that the class could expect to receive no more than $8.5 million, based upon claims data and reasonable assumptions of less than maximum recovery per claim. *Id.* at 727.

The district court here made the same errors criticized by the Seventh Circuit in *Eubank* by simply assuming benefit instead of making a reasonable quantification of what the class would actually receive from the claims process. An adverse inference drawn from the parties' refusal to disclose the claims rate is appropriate. It is almost certain that "the aggregate

value of the settlement to the class" "would be less than the attorneys' fees," meaning "class counsel sold out the class." *Eubank*, 753 F.3d at 726.[2]

In addition to *Eubank*, other circuit courts have universally rejected settlements where the value delivered to the class is either undetermined or likely to be lower than the amount awarded to the attorneys. *See, e.g.*, *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013).

In the Third Circuit's *Baby Products*, the parties created a $35.5 million settlement fund out of which the attorneys claimed $14 million for themselves. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 169 (3d Cir. 2012). The Third Circuit vacated "the District Court's orders approving the settlement and the fund allocation plan because it did not have the factual basis necessary to determine whether the settlement was fair to the entire class. Most importantly, it did not know the amount of compensation that will be distributed directly to the class." *Id.* at 175. The Third Circuit reversed the district court's approval of the settlement because the district court failed to meet its affirmative obligation to consider the class's actual recovery, and the appeals court's own questioning revealed the class received less than $3 million. *Id.* at 170, 174. "[I]f the parties have not on their own initiative supplied the information needed to make the necessary findings, the court should affirmatively seek out such information." *Id.* at 174. The failure to do so meant that the district court had failed to consider whether class counsel had "adequately prioritize[d] direct recovery." *Id.* at 178.

"Cases are better decided on reality than on fiction." *Dry Max Pampers* 724 F.3d at 721 (internal quotation omitted). This is especially true when adjudicating the rights of hundreds of thousands of absent class



members who rely upon the district court. Thus, "district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank*, 753 F.3d at 723 (internal quotation omitted); *Baby Prods.* 708 F.3d at 175 (same). That scrutiny includes determining what is real value and what is illusion created to "mask [] the relative payment of the class counsel as compared to the amount of money actually received by the class members." *In re: HP Inkjet Litigation*, 716 F.3d, 1173, 1179 (9th Cir. 2013); *cf. Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (chronicling problem of "fictitious" fund valuations that "serve only the 'self-interests' of the attorneys and the parties, and not the class.").

While the district court questioned Class Counsel about the claims rate at the fairness hearing, it ultimately approved the settlement and outrageous fee request without any scrutiny and without the necessary information. The district court ultimately ruled that the amount of money actually received by the class was irrelevant to the determination of whether the settlement is fair. That is directly contrary to every Court of Appeals that has recently addressed the issue, the Federal Judicial Center, and Justice O'Connor's concurrence in *International Precious Metals, infra*. The

District courts ~~in the Eleventh Circuit~~ have routinely employed a lodestar cross-check for guidance in assessing the reasonableness of a percentage fee award. *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001) (finding that multiplier of 1.45 does not require higher percentage award, in case settled for $110 million); *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) (approving lodestar multiplier of 1.2 in $4.25 million settlement).

The first factor set forth in *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), is "the time and labor required." *Id.* at 772. In this Circuit, that factor has been interpreted to mean the number of hours that class counsel spent on the case – in effect, a lodestar cross-check. Class counsel failed to provide their lodestar figure to the class members, ~~making~~

irrespective of the low claims rate, it was limited to a fee of class counsel's unenhanced lodestar, and no more.

Regardless of the method of awarding fees, the district court should have required class counsel to file its lodestar data, to permit the calculation of either the lodestar cross-check, or class counsel's fee. The district court's failure to require the filing of the lodestar figure was an abuse of discretion, and part of a pattern by the district court of approving the settlement and the fee without adequate supporting data.

### III. The District Court Violated Rule 23(h) and Class Members' Right to Due Process.

Fed. R. Civ. P. 23(h) provides:

(1) *Motion for Award of Attorney Fees.* A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) *Objections to Motion.* A class member, or a party from whom payment is sought, may object to the motion.

(3) *Hearing and Findings.* The court hay hold a hearing and must find the facts and state its conclusions of law on the motion under Rule 52(a).

The Ninth and Seventh Circuits have held that a plain reading of Rule 23(h) requires that fee objections be due only after Class Counsel has filed



its complete fee *motion*, with supporting affidavits, time records, hourly rates, and other data, and directed notice of that *motion* to the class.

> We hold that the district court abused its discretion when it erred as a matter of law by misapplying Rule 23(h) in setting the objection deadline for class members on a date before the deadline for lead counsel to file their fee motion. Moreover, the practice borders on a denial of due process because it deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion.
>
> The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed [and] requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed.

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-994 (9th Cir.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 21, 2015, I express mailed the foregoing to the Clerk of the Court. It is my understanding that the CM/ECF system will send notification of the filing to the e-mail addresses denoted on the Electronic Mail Notice List.

Executed on May 21, 2015

By: *Michael Narkin*



**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE

Flat Rate
Mailing Envelope
*For Domestic and International Use*

*Visit us at usps.com*

EK700972756US

Place

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT)   PHONE ( )

Michael Narkin
85391 Chezem Road
Eugene, OR 97405

PAYMENT BY ACCOUNT (if applicable)


UNITED STATES POSTAL SERVICE | PRIORITY ★ MAIL ★ EXPRESS

**HOW TO USE:**

1. C
  T
  I

**DELIVERY OPTIONS (Customer Use Only)**
☐ **SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE ( )

ORIGIN (POSTAL SERVICE USE ONLY)

EP13F JULY 2007 © U.S. Pos